[J-85-2025] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 81 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 380 MDA |
| | : | 2023 dated January 8, 2024, |
| v. | : | Affirming and Remanding the |
| | : | Judgment of Sentence of the |
| | : | Dauphin County Court of Common |
| MICHAEL DEAN OSMAN, | : | Pleas, Criminal Division, at No. CP- |
| | : | 22-CR-0001818-2020 dated |
| Appellant | : | November 30, 2022 |
| | : | |
| | : | ARGUED:  October 8, 2025 |

## DISSENTING OPINION

**JUSTICE WECHT**                                            **DECIDED:  July 21, 2026**

SORNA[1] "classifies offenders[[2]] and their offenses into three tiers."[3]  Tier III is the most severe.  There are two circumstances under which an offender can be classified as a Tier III offender.  The first occurs when the offender is convicted of a Tier III predicate offense.[4]  The second occurs when an offender has "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses."[5]  With a Tier III designation comes the lengthiest

---

[1]     SORNA is the commonly used acronym for the Sexual Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.11-9799.75.

[2]     SORNA defines a "sexual offender" as "[a]n individual who has committed a sexually violent offense."  42 Pa.C.S. § 9799.12.  SORNA lists, and separates into tiers, those sexually violent offenses in 42 Pa.C.S. § 9799.14.

[3]     *Commonwealth v. Muniz*, 164 A.3d 1189, 1206 (Pa. 2017).

[4]     *See* 42 Pa.C.S. § 9799.14(d)(1)-(13).

[5]     *Id.* § 9799.14(d)(16); *see also id.* § 9799.14(b)-(c) (listing the Tier I and II predicate offenses).

and most burdensome consequences. Tier III offenders are subject to "lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly."[6] Tier III offenders also face a "mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court."[7]

Michael Osman was not convicted of a Tier III offense.[8] He instead was convicted in a single trial of "[t]wo or more . . . Tier I or Tier II sexual offenses:"[9] corruption of minors,[10] unlawful contact with a minor,[11] and indecent assault.[12] In light of these convictions, and pursuant to Subsection 9799.14(d)(16), the trial court sentenced Osman to the mandatory three-year probationary term. Today's Majority declares this sentence to be illegal and remands for a new sentencing hearing.[13] For the third time now,[14] the Majority reads SORNA's "two or more convictions" provision as requiring "an act, a conviction, and a subsequent act."[15] However, this sequential mandate appears nowhere

---

[6]     *Muniz*, 164 A.3d at 1207; *see* 42 Pa.C.S. § 9799.15(a)(3), (e)(3).

[7]     42 Pa.C.S. § 9718.5(a).

[8]     *See* 42 Pa.C.S. § 9799.14(d)(1)-(13).

[9]     *Id.* § 9799.14(d)(16).

[10]     18 Pa.C.S. § 6301(a)(1)(ii); *see* 42 Pa.C.S. § 9799.14(b)(8) (classifying corruption of minors as a Tier I offense).

[11]     18 Pa.C.S. § 6318; *see* 42 Pa.C.S. § 9799.14(c)(5) (classifying unlawful contact with a minor as a Tier II offense).

[12]     18 Pa.C.S. § 3126(a)(1); *see* 42 Pa.C.S. § 9799.14(b)(6) (classifying indecent assault as a Tier I offense).

[13]     Maj. Op. at 2, 24.

[14]     *See A.S. v. Pennsylvania State Police*, 143 A.3d 896, 908 (Pa. 2016); *Commonwealth v. Lutz-Morrison*, 143 A.3d 891, 895 (Pa. 2016).

[15]     Maj. Op. at 2 (quoting *A.S.*, 143 A.3d at 908; *Lutz-Morrison*, 143 A.3d at 895).

in SORNA. This Court made it up in *A.S.* and in *Lutz-Morrison* in a flawed attempt to conform SORNA's unambiguous language to what this Court decided was the statute's primary goal. As I explained at the time, this Court erroneously disregarded "the meaning of unambiguous statutory language in order to achieve what it perceive[d] to be a preferable result."[16] Today's Majority makes the same mistake.

The first step in statutory interpretation is the most important one. A court must ascertain whether the contested language is "clear and free from all ambiguity."[17] When it is, the analysis must end. The court is bound to apply that language as written.[18] In *A.S.*, the Court stumbled right out of this starting gate. At first, the Court conceded that the provision "seem[ed] clear and unambiguous on the surface."[19] However, the Court, unsatisfied by that clarity, embarked upon a more searching interpretive endeavor. The Court examined the statute "as a whole"[20] and was persuaded by the "overall statute" and underlying "legislative policy findings."[21] The Court discovered ambiguity arising from the supposition that a plain language interpretation purportedly conflicted with what the Court deemed to be the "primary concern of the statute:" monitoring sexually violent predators using a graduated, recidivist-based statutory scheme.[22] To find such ambiguity, the Court had to dig deep. As today's Majority puts it, the ambiguity did not develop from two

---

[16]     *A.S.*, 143 A.3d at 917 (Wecht, J., dissenting).

[17]     1 Pa.C.S. § 1921(b).

[18]     *Id.* ("When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

[19]     *A.S.*, 143 A.3d at 904 (quoting *Commonwealth v. Gehris*, 54 A.3d 862, 878 (Pa. 2012) (Opinion in Support of Reversal) ("*Gehris* OISR")).

[20]     *Id.* (quoting *Gehris* OISR, 54 A.3d at 878).

[21]     *Id.* at 906 (citing favorably *Gehris* OISR, 54 A.3d at 878-79).

[22]     *Id.* at 907 n.14.

reasonable interpretations of the same language, but instead "arose when that provision was considered in the context of the overall recidivist statutory scheme."[23]

As I explained in *A.S.*, "the plain meaning of the statutory language should mark the beginning and the end of our analysis."[24] The same holds true today. The *A.S.* Court failed to identify any "reasonable alternative interpretation" of that language that would justify a finding of ambiguity.[25] By endorsing *A.S*'s and *Lutz-Morrison*'s willingness to circumvent the statute's plain language in search of ambiguity, today's Majority fares no better. There was no reason then, and there is no reason now, to "inquire into or speculate about the General Assembly's intent, its objective, or its primary concern in enacting that text into law."[26] When the language of a statute is clear, our mandate is equally clear. We must apply that text as written, regardless of consequence.[27]

---

[23] Maj. Op. at 16 (citing *A.S.*, 143 A.3d at 905-06).

[24] *A.S.*, 143 A.3d at 915 (Wecht, J., dissenting).

[25] *Id.* at 916 (Wecht, J., dissenting).

[26] *Id.* at 917 (Wecht, J., dissenting).

[27] In his concurring opinion, Justice Brobson embraces the notion that Subsection 9799.14(d)(16) should be read consonant with SORNA's overall recidivist philosophy. Conc. Op. at 2. However, Justice Brobson would limit the Majority's ruling to those cases in which the charged Tier I and Tier II offenses arose from the same criminal episode. When a sexual offender is charged with multiple Tier I and Tier II offenses, but those offenses arose in separate, independent circumstances, and when the Commonwealth elects to pursue convictions on all of those charges in one trial, Justice Brobson would hold that, upon conviction of those charges, Subsection 9799.14(d)(16) would still apply and that offender would be subject to the three-year probationary sentence mandated by 42 Pa.C.S. § 9718.5(a). Conc. Op. at 1-4. Justice Brobson is correct, but not because that result aligns with the statute's recidivist philosophy. He is correct because that is what the plain terms of Subsection 9799.14(d)(16) require. A straightforward application of SORNA's terms as written arrives at the same destination without imposing upon trial courts the complicated burden of assessing if and when charges arise from the same criminal episode.

No court, including this one, has the authority to "insert words into a statute."[28]  Nor can a court "simply rewrite" a clear statutory term in order to achieve the General Assembly's stated (or unstated) aims, even "under the guise of statutory construction."[29]  This Court did just that in *A.S.* and in *Lutz-Morrison*.  Rather than correct course, today's Majority barrels down the same wayward path and insists on inventing and then imposing a temporal term—"an act, a conviction, and a subsequent act"—where none exists in SORNA.  As I explained in *A.S.*, SORNA's "two or more convictions" language is plain and unambiguous, and should be applied as it was written by the General Assembly.  Because the Majority insists on perpetuating its errors rather than fixing them, and for all of the reasons set forth earlier in my dissenting opinions in *A.S.* and *Lutz-Morrison*, I once again respectfully dissent.

Justice Mundy joins this dissenting opinion.

---

[28]  *Burke ex rel. Burke v. Independence Blue Cross*, 103 A.3d 1267, 1274 (Pa. 2014).

[29]  *Id.*